Filed 7/12/21  P. v. Martinez-Costa CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C089499 |
| Plaintiff and Respondent, | (Super. Ct. No. 12F00180) |
| v. | |
| CLEO MARTINEZ-COSTA, | |
| Defendant and Appellant. | |

Defendant Cleo Martinez-Costa challenges the trial court's denial of her petition for resentencing under Penal Code section 1170.95 (statutory section citations that follow are to the Penal Code) based on changes made to the felony-murder rule by Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Senate Bill 1437).  Defendant contends the trial court erred in summarily denying her petition following its appointment of counsel and determination that she had presented a facially valid petition.  She argues the court's denial at that procedural juncture without briefing or an evidentiary hearing denied her

1

due process and effective assistance of counsel. For the reasons explained herein, we find any trial court error was harmless beyond a reasonable doubt.

## FACTS AND HISTORY OF THE PROCEEDINGS

We incorporate portions of our discussion set forth in our unpublished opinion deciding defendant's prior appeal, *People v. Martinez-Costa* (June 13, 2018, C076567) [nonpub. opn.] (*Martinez-Costa*):

"A jury found Cleo Martinez-Costa (Costa) guilty of the first degree murder of Hiter in violation of section 187, subdivision (a), found true special allegations that a principal in her offense was armed with a firearm within the meaning of section 12022, subdivision (a)(1), and that the murder was committed while in the commission of an attempted robbery within the meaning of section 190.2, subdivision (a)(17).

"The jury also found Costa guilty of the attempted robbery of Hiter as defined in sections 664/211 and found true the special allegation that the principal in the offense was armed with a firearm within the meaning of section 12022, subdivision (a)(1).

"Thereafter, the trial court found that on May 2, 1994, Costa had been convicted of a violation of section 245, subdivision (a)(2) (assault with a firearm) and 12022.5 (personal use of a firearm), bringing her within the provisions of section 667, subdivision (a) and sections 667, subdivisions (b) through (i) and 1170.12.

"The court sentenced Costa to life without the possibility of parole on the special circumstance murder conviction, one year for the section 12022, subdivision (a)(1) allegation, five years for the prior conviction under section 667, subdivision (a), and stayed the sentence for count two. The trial court awarded Costa 850 days credit for time served." (*Martinez-Costa, supra*, C076567 at p. 2.)

Defendant appealed challenging the sufficiency of the evidence supporting the section 190.2, subdivision (a)(17) enhancement and requesting a modification of her custody credits. (*Martinez-Costa, supra*, C076567 at p. 2.) We found substantial

2

evidence supported the enhancement but agreed a recalculation of custody credits was required and remanded the matter to the trial court for that purpose. (*Id.* at pp. 3, 34.)

As we explained: "The evidence showed that Costa lured Hiter—a drug dealer who she believed had sold her inferior methamphetamine—to her home in the dead of night to be robbed by Doria, another drug dealer, who she believed had the mentality of a child and was 'fuckin' crazy.' That Costa recruited Doria to rob Hiter suggests that she knew Doria was capable of violence. We note that, as a matter of common sense, taking money and drugs from a drug dealer is an inherently dangerous activity.

"Here, the record shows both Doria and Hiter used and sold drugs and Costa knew that. Moreover, Doria was a dangerous person, who carried a gun at all times. He was known in his circle of acquaintances, of which Costa was one, to at least claim to have used a firearm to rob people, was known to have been previously involved in a shootout while robbing a dealer, and was known as a person considered capable of murder.

"Costa's own son harbored concerns about Doria's violent tendencies and the danger he posed to Costa, which one can reasonably infer he expressed to his mother, further supporting Costa's subjective awareness of the risk incurred by enlisting Doria to rob Hiter.

"Costa's awareness of the heightened potential for grave danger during the robbery may also be inferred from Costa texting her friend not come to Costa's house shortly before the botched robbery, arguably to keep the friend safe and avoid witnesses to the crime. That Hiter would not be a passive victim and was capable of defending himself from an armed assailant may be inferred from his apathy concerning a warning that Doria might try to rob him if he flashed money in front of him again. All of these factors notwithstanding, Costa arranged the robbery for her own purposes and participated in it knowing she was bringing together two violent drug dealers who were quite likely armed with firearms." (*Martinez-Costa, supra*, C076567 at pp. 34-35.)

3

In light of this evidence and inferences that could be drawn therefrom, we determined substantial evidence supported "the jury's ultimate finding that objectively the robbery Costa orchestrated posed a grave risk of death and that subjectively she was aware that her active participation, indeed her organization, of the robbery of Hiter, posed a grave risk of his death and, therefore, that she acted with a reckless indifference to human life." (*Martinez-Costa, supra*, C076567 at pp. 35-36.)

Defendant's Section 1170.95 Petition

Defendant's form petition for resentencing pursuant to section 1170.95 was filed with the superior court on January 30, 2019. In it, defendant checked boxes alleging: (1) "A complaint, information, or indictment was filed against me that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine"; (2) "At trial, I was convicted of 1st or 2nd degree murder pursuant to the felony murder rule or the natural and probable consequences doctrine"; (3) "I could not now be convicted of 1st or 2nd degree murder because of changes made to Penal Code §§ 188 and 189, effective January 1, 2019"; and (4) "I request that this court appoint counsel for me during this re-sentencing process." Defendant failed to check any of the boxes on the form petition under No. five pertaining to defendant's conviction of first degree felony murder, and as such did not aver that she was not the actual killer, did not aid/abet the murder, and was not a major participant and did not act with reckless indifference to human life.

A minute order in the appellate record reflects that on March 5, 2019, the trial court reviewed defendant's petition and "found no procedural defect." A March 12, 2019, letter informed defendant that an attorney had been appointed to represent defendant. Thereafter, on March 14, 2019, the trial court granted the People's request for more time to respond to defendant's resentencing petition. However, before any response

4

was filed, on April 15, 2019, the trial court issued an order summarily denying defendant's petition.

This order stated: "Defendant Cleo Martinez-Costa has filed a Penal Code § 1170.95 petition for a vacating of defendant Costa's first degree murder conviction in Sacramento County Superior Court Case No. 12F00180. As the Honorable Ernest Sawtelle was the original sentencing judge in the matter, Judge Sawtelle will now address the petition.

"Penal Code § 1170.95 applies only to murder convictions. As such, the court will consider only defendant Martinez-Costa's murder conviction in this proceeding.

"Defendant Martinez-Costa has not shown that she falls within the provisions of Penal Code § 1170.95. In Case No. 12F00180, she was convicted of Penal Code § 187 first degree murder and a Penal Code § 190.2(a)(17) robbery-murder special circumstance was found true. In finding true the Penal Code § 190.2(a)(17) special circumstance, the jury necessarily found that defendant Martinez-Costa was either the actual killer, acted with intent to kill, or was a major participant in the underlying crime who acted with reckless indifference to human life, as the jury was specifically instructed with CALCRIM No. 703 that it must make such a finding before finding true the Penal Code § 190.2(a)(17) robbery-murder special circumstance.

"As Penal Code §§ 187 and 189 still provide for first degree murder based on robbery-murder, when the trier of fact has found that the defendant either was the actual killer, intended to kill, or was a major participant in the robbery who acted with reckless indifference to human life, and the jury in Case No. 12 F00180 necessarily found that to be so with regard to defendant Martinez-Costa, [¶] IT IS ORDERED that defendant Martinez-Costa's Penal Code § 1170.95 petition for vacating of the murder conviction is DENIED."

This appeal followed.

5

I

*Applicable Legal Principles*

Senate Bill 1437 was enacted to "amend the felony murder rule and the natural and probable consequences doctrine, . . . to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1(f).)  Senate Bill 1437 achieves these goals by amending section 188 to require that a principal act with express or implied malice (§ 188, as amended by Stats. 2018, ch. 1015, § 2), and by amending section 189 to state that a person can be liable for felony murder only if (1) "[t]he person was the actual killer"; (2) the person, with an intent to kill, was an aider or abettor in the commission of murder in the first degree; or (3) "[t]he person was a major participant in the underlying felony and acted with reckless indifference to human life . . . ."  (§ 189, subd. (e), as amended by Stats. 2018, ch. 1015, § 3.)

Senate Bill 1437 also added section 1170.95 to provide a resentencing petition process for any "person convicted of felony murder or murder under a natural and probable consequences theory."  (§ 1170.95, subd. (a).)  After a defendant submits a petition and the court performs an initial review for missing information, subdivision (c) of section 1170.95 provides:  "The court shall review the petition and determine if the petitioner has made a prima facie showing that the petitioner falls within the provisions of this section.  If the petitioner has requested counsel, the court shall appoint counsel to represent the petitioner.  The prosecutor shall file and serve a response within 60 days of service of the petition and the petitioner may file and serve a reply within 30 days after the prosecutor response is served.  These deadlines shall be extended for good cause.  If

the petitioner makes a prima facie showing that he or she is entitled to relief, the court shall issue an order to show cause."  (§ 1170.95, subd. (c).)

## II

### *Application of the Doctrine of Harmless Error*

Here, the trial court reviewed defendant's section 1170.95 petition and "found no procedural defect" as noted in its minute order.  The court then appointed counsel and granted the People's request for additional time to file a responsive brief.  Thus, it would appear from the record that the trial court made a determination under the first sentence of section 1170.95, subdivision (c) that defendant had "made a prima facie showing that the petitioner falls within the provisions of this section."  However, after appointing counsel and granting an extension for responsive briefing, the court proceeded to summarily deny defendant's petition ex parte on the ground that the jury's true finding of the section 190.2, subdivision (a)(17) special circumstance precluded her eligibility for relief.  This order did not identify whether the court was revisiting its initial prima facie determination or issuing an order denying defendant's requested relief under the last sentence of subdivision (c) that she had not made a prima facie showing that she was "*entitled* to relief."  (Italics added.)

Defendant argues that because she made a prima facie showing of her right to relief, she was entitled to briefing, an evidentiary hearing, and to have her appointed counsel actually represent her at this critical phase in her case.  She reasons the trial court's failure to afford her these rights as provided in the statute violated her rights to due process and effective assistance of counsel.  We find any error in failing to follow the statute was harmless under the circumstances of this case.

Appellate courts are divided on whether trial courts may review the record of conviction and deny a section 1170.95 petition before appointing counsel and allowing briefing.  (Compare *People v. Lewis* (2020) 43 Cal.App.5th 1128, 1138-1140 [trial courts

may review record of conviction and need not first appoint counsel], review granted Mar. 18, 2020, S260598, with *People v. Cooper* (2020) 54 Cal.App.5th 106, 109 [disagreeing with *Lewis*], review granted Nov. 10, 2020, S264684.)  The Supreme Court has granted review on these issues.  (See order granting review of *Lewis, supra*, Mar. 18, 2020, S260598.)

However, it is not necessary in this case to resolve this issue because even if the court should have permitted briefing and advocacy by appointed counsel prior to denying defendant's petition, any error would be harmless even under the more stringent beyond-a-reasonable-doubt standard.  (*Chapman v. California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 710-711]; *People v. Cooper, supra*, 54 Cal.App.5th at pp. 112, 123 [recognizing error in following section 1170.95's procedures, including the appointment of counsel, may be harmless if relief is unavailable as a matter of law].)

As we noted in *Martinez-Costa*, the jury found the section 190.2, subdivision (a)(17) special circumstance true.  (*Martinez-Costa, supra*, C076567 at pp. 35-36.)  A review of the jury instructions and verdict forms confirm this.  For the special circumstances under section 190.2, subdivision (a)(17), the jury instructed:  "If you decide that a defendant is guilty of first degree murder but was not the actual killer, then, when you consider the special circumstance of murder in the commission of attempted robbery, you must also decide whether the defendant acted either with intent to kill or with reckless indifference to human life.

"In order to prove this special circumstance for a defendant who is not the actual killer but who is guilty of first degree murder as an aider and abettor, the People must prove either that the defendant intended to kill, or the People must prove all of the following:  [¶]  1.  The defendant's participation in the crime began before or during the killing;  [¶]  2.  The defendant was a major participant in the crime;  [¶]  AND  [¶]  3. When the defendant participated in the crime, he or she acted with reckless indifference to human life.

8

"A person acts *with reckless indifference to human life* when he or she knowingly engages in criminal activity that he or she knows involves a grave risk of death. . . . [¶] If a defendant was not the actual killer, then the People have the burden of proving beyond a reasonable doubt that he or she acted with either the intent to kill or with reckless indifference to human life and was a major participant in the crime for the special circumstance of murder in the commission of attempted robbery to be true. If the People have not met this burden, you must find this special circumstance has not been proven true for that defendant." (Italics in original.) The verdict forms also included a true finding for the special circumstance under section 190.2, subdivision (a)(17).

The jury's findings track the requirements of first degree murder liability for a participant even after Senate Bill 1437's modifications because the jury found that, at a minimum, defendant was a major participant who acted with reckless indifference to human life. (§ 189, subd. (e)(3).) Even if it were true that the court prematurely reviewed this information from the record at the prima facie eligibility stage or prematurely ruled in the prima facie entitlement phase, any alleged error in doing so would be harmless beyond a reasonable doubt. This is so because the record of conviction would necessarily be considered in this matter and the special circumstance finding would still properly disqualify defendant from her requested relief as a matter of law. It is beyond a reasonable doubt that a responsive brief or oral argument from appointed counsel could not have changed the disqualifying findings of the jury. Accordingly, any trial court error was harmless.

Finally, as to defendant's arguments that she could have offered additional evidence relevant to the court's determination, defendant's petition did not allege nor include any information indicating that she had new evidence relevant to the court's eligibility determination. In fact, as noted above, defendant failed to check the boxes under subsection No. five that would have averred that she was not the actual killer, did not intend to kill, and did not act with reckless indifference to human life. As such, we

9

need not determine whether including such allegations or evidence might have made a difference to the disposition of defendant's petition given the jury's section 190.2, subdivision (a)(17) determination.

## DISPOSITION

The trial court's order on defendant's petition is affirmed.

_____
HULL, Acting P. J.

We concur:

_____
MURRAY, J.

_____
KRAUSE, J.